1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   EDWARD LONG,                                No.  2:11-cv-2548 TLN DAD P

12               Plaintiff,

13         v.

14   D. MINER et al.,                            FINDINGS AND RECOMMENDATIONS

15               Defendants.

16

17         Plaintiff is a state prisoner proceeding pro se with a civil rights action seeking relief under

18   42 U.S.C. § 1983.  This matter is before the court on a motion for summary judgment brought

19   pursuant to Rule 56 of the Federal Rules of Civil Procedure on behalf of defendants McLean,

20   Martinez, Miner, and Williams.  Plaintiff has filed an opposition to the motion, and defendants

21   have filed a reply.

22         For the reasons discussed below, the court will recommend that defendants' motion for

23   summary judgment be granted.

24                                **BACKGROUND**

25         Plaintiff is proceeding on an amended complaint against defendants McLean, Martinez,

26   Miner, and Williams.  Therein, plaintiff alleges that he suffers from rheumatoid arthritis and has

27   not received adequate medical care for his condition.  Plaintiff alleges that he complained about

28   his lack of medical care, denial of pain medication, and prison officials' refusal to provide him

1

1  with access to a specialist through the prison's administrative grievance process but received no

2  appropriate relief.  Plaintiff claims that the defendants, who were involved in scheduling medical

3  appointments with outside specialists and/or reviewed plaintiff's administrative grievances, have

4  violated his rights under the Eighth Amendment.  In terms of relief, plaintiff requests an award of

5  monetary damages (Am. Compl. & Attach. 1-14.)

6                          **SUMMARY JUDGMENT STANDARDS UNDER RULE 56**

7         Summary judgment is appropriate when the moving party "shows that there is no genuine

8  dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

9  Civ. P. 56(a).

10        Under summary judgment practice, the moving party "initially bears the burden of

11 proving the absence of a genuine issue of material fact."  In re Oracle Corp. Securities Litigation,

12 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

13 The moving party may accomplish this by "citing to particular parts of materials in the record,

14 including depositions, documents, electronically store information, affidavits or declarations,

15 stipulations (including those made for purposes of the motion only), admission, interrogatory

16 answers, or other materials" or by showing that such materials "do not establish the absence or

17 presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to

18 support the fact."  Fed. R. Civ. P. 56(c)(1)(A), (B).

19        When the non-moving party bears the burden of proof at trial, "the moving party need

20 only prove that there is an absence of evidence to support the nonmoving party's case."  Oracle

21 Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325.).  See also Fed. R. Civ. P. 56(c)(1)(B).

22 Indeed, summary judgment should be entered, after adequate time for discovery and upon motion,

23 against a party who fails to make a showing sufficient to establish the existence of an element

24 essential to that party's case, and on which that party will bear the burden of proof at trial.  See

25 Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the

26 nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a

27 circumstance, summary judgment should be granted, "so long as whatever is before the district

28 court demonstrates that the standard for entry of summary judgment, . . ., is satisfied."  Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party."  Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011).  It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

**OTHER APPLICABLE LEGAL STANDARDS**

I. Civil Rights Act Pursuant to 42 U.S.C. § 1983

> The Civil Rights Act under which this action was filed provides as follows:
>
> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of  § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

II. The Eighth Amendment and Inadequate Medical Care

The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment prohibited by the Eighth Amendment.  Whitley v. Albers, 475 U.S. 312, 319 (1986); Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976).  In order to prevail on a claim of cruel and unusual punishment, a prisoner must allege and prove that objectively he suffered a sufficiently serious deprivation and that subjectively prison officials acted with deliberate indifference in allowing or causing the deprivation to occur.  Wilson v. Seiter, 501 U.S. 294, 298-99 (1991).

1        If a prisoner's Eighth Amendment claim arises in the medical care context, the prisoner

2  must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference

3  to serious medical needs." Estelle, 429 U.S. at 106.  An Eighth Amendment medical claim has

4  two elements:  "the seriousness of the prisoner's medical need and the nature of the defendant's

5  response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991), overruled on

6  other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

7        A medical need is serious "if the failure to treat the prisoner's condition could result in

8  further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin, 974

9  F.2d at 1059 (quoting Estelle, 429 U.S. at 104).  Indications of a serious medical need include

10  "the presence of a medical condition that significantly affects an individual's daily activities." Id.

11  at 1059-60.  By establishing the existence of a serious medical need, a prisoner satisfies the

12  objective requirement for proving an Eighth Amendment violation.  Farmer v. Brennan, 511 U.S.

13  825, 834 (1994).

14        If a prisoner establishes the existence of a serious medical need, he must then show that

15  prison officials responded to the serious medical need with deliberate indifference.  See Farmer,

16  511 U.S. at 834.  In general, deliberate indifference may be shown when prison officials deny,

17  delay, or intentionally interfere with medical treatment, or may be shown by the way in which

18  prison officials provide medical care.  Hutchinson v. United States, 838 F.2d 390, 393-94 (9th

19  Cir. 1988).  Before it can be said that a prisoner's civil rights have been abridged with regard to

20  medical care, however, "the indifference to his medical needs must be substantial.  Mere

21  'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action."

22  Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at

23  105-06).  See also Toguchi v. Soon Hwang Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere

24  negligence in diagnosing or treating a medical condition, without more, does not violate a

25  prisoner's Eighth Amendment rights."); McGuckin, 974 F.2d at 1059 (same).  Deliberate

26  indifference is "a state of mind more blameworthy than negligence" and "requires 'more than

27  ordinary lack of due care for the prisoner's interests or safety.'" Farmer, 511 U.S. at 835.

28  /////

1    Delays in providing medical care may manifest deliberate indifference.  Estelle, 429 U.S.

2    at 104-05.  To establish a claim of deliberate indifference arising from delay in providing care, a

3    plaintiff must show that the delay was harmful.  See Hallett v. Morgan, 296 F.3d 732, 745-46 (9th

4    Cir. 2002); Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994); McGuckin, 974 F.2d at 1059;

5    Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990); Hunt v. Dental Dep't, 865 F.2d 198,

6    200 (9th Cir. 1989); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir.

7    1985).  In this regard, "[a] prisoner need not show his harm was substantial; however, such would

8    provide additional support for the inmate's claim that the defendant was deliberately indifferent to

9    his needs."  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).

10    Finally, mere differences of opinion between a prisoner and prison medical staff or

11    between medical professionals as to the proper course of treatment for a medical condition do not

12    give rise to a § 1983 claim.  See Snow v. McDaniel, 681 F.3d 978, 988 (9th Cir. 2012); Toguchi,

13    391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Sanchez v. Vild, 891

14    F.2d 240, 242 (9th Cir. 1989); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

15    **DEFENDANTS' STATEMENT OF UNDISPUTED FACTS AND EVIDENCE**

16    Defense counsel has submitted a statement of undisputed facts supported by declarations

17    signed under penalty of perjury by defendants McLean, Martinez, Miner, and Williams as well as

18    Mule Creek State Prison's Chief Physician and Surgeon Dr. Smith.  That statement of undisputed

19    facts is also supported by citations to copies of plaintiff's medical records and plaintiff's inmate

20    appeals and prison officials' responses thereto.  The evidence submitted by the defendants in

21    support of the pending motion for summary judgment establishes the following.

22    At all relevant times, plaintiff was incarcerated at Mule Creek State Prison.  Plaintiff

23    commenced this action on September 28, 2011.  Plaintiff filed his amended complaint on October

24    26, 2011.  Plaintiff alleges that the defendants were deliberately indifferent to his serious medical

25    needs because they failed to schedule an appointment for him to see a Rheumatologist in violation

26    of the Eighth Amendment.  (Defs.' SUDF 1-2, Pl.'s Am. Compl.)

27    Plaintiff has suffered from symptoms associated with rheumatoid arthritis ("RA") since

28    2005.  RA is not a life-threatening medical condition.  Diagnosis and treatment for RA is within

6

the scope and practice of Board Certified internists who served as plaintiff's primary care physicians.  Between July 1, 2005, and August 30, 2007, medical care providers at MCSP evaluated and treated plaintiff's symptoms in a manner consistent with an RA diagnosis.  This included taking x-rays of plaintiff's hands and wrists and prescribing him medication to manage symptoms associated with RA, including Naprosyn, Ibuprofen, Motrin, and glucosamine.  The treatment plaintiff received between October 14, 2005, and August 30, 2007, was within the standard of care and skill ordinarily exercised by reputable members of the medical profession. (Defs.' SUDF 3-6, Smith Decl., Boyd Decl. Ex. B.)

On August 30, 2007, Physician's Assistant Todd evaluated plaintiff, reviewed his lab results and noted that his test for rheumatoid factor, which can indicate RA, was elevated.  Todd completed a request for services to secure a routine, non-emergent Rheumatology consultation for plaintiff.  The request was approved on September 4, 2007, and forwarded to defendant Martinez, a Registered Nurse, in early September 2007.  (Defs.' SUDF 7-9, Smith Decl., Boyd Decl. Ex. B, Martinez Decl.)  Defendant Martinez was the Medical and Return Outside Specialist Scheduler. In that capacity, she scheduled inmates for appointments with medical providers outside of CDCR.  She did not schedule inmates for appointments with medical providers within CDCR. Once she received an approved request for services, she prepared a package to send to the outside provider to request that an appointment be scheduled.  This package consisted of the request for services form indicating the type of service requested, a summary of the inmate's medical status and medical needs, and the inmate's relevant medical records.  (Defs.' SUDF 10-11, Martinez Decl.)

Once defendant Martinez received plaintiff's approved request for services, she immediately set about to schedule him for an appointment with a Rheumatologist at the University of California, Davis ("UCD") by compiling the documents necessary to request an appointment and forwarding them to UCD.  At that time, there was a long list of patients seeking routine, non-emergent services from a Rheumatologist.  Because UCD received so many requests for services in the specialty of rheumatology, UCD could not schedule appointments for routine

/////

7

1  services to occur sooner than six to nine months after they received the request.  (Defs.' SUDF

2  12-13, Martinez Decl.)

3         There were often delays in scheduling inmates for appointments with Rheumatologists,

4  who had the discretion to select and prioritize the patients they evaluated and treated.

5  Rheumatology is a discrete medical specialty for which there was a small number of specialists.

6  There was an even smaller number of Rheumatologists willing to accept prisoners as patients.  It

7  was not unusual for the few Rheumatologists to have substantial backlogs and thus not be

8  available for many months to provide routine or non-emergency care when called by prisons for

9  appointments.  (Defs.' SUDF 14-16, McLean Decl., Williams Decl., Smith Decl.)

10         Because of the delays UCD was experiencing, UCD declined to schedule plaintiff for an

11  appointment.  Defendant Martinez then requested that plaintiff be scheduled for an appointment

12  to see a Rheumatologist at University of California, San Francisco ("UCSF").  Like UCD, UCSF

13  was experiencing significant delays in scheduling appointments within the specialty of

14  rheumatology, and UCSF declined to schedule an appointment for plaintiff.  Defendant Martinez

15  next requested that plaintiff be scheduled for an appointment to see a Rheumatologist at San

16  Joaquin General Hospital ("SJGH").  SJGH placed plaintiff on a long waiting list, which

17  defendant Martinez tracked in an attempt to ensure that plaintiff was not overlooked.  Plaintiff

18  was subsequently scheduled with a Rheumatologist at SJGH on July 9, 2008.  (Defs.' SUDF 17-

19  19, Martinez Decl., McLean Decl., Miner Decl., Williams Decl., Smith Decl.)

20         Outside providers, not CDCR, determine and arrange appointment dates.  CDCR staff

21  does not have any control over when an outside provider is available for an appointment.

22  Defendant Martinez used her best efforts to schedule plaintiff for an appointment with a

23  Rheumatologist.  She did not deliberately fail to schedule or delay plaintiff's Rheumatologist

24  appointment.  Despite her best efforts, there was a long waiting list to see a Rheumatologist

25  through all of the outside providers she contacted, and plaintiff was scheduled for the first

26  appointment that SJGH had to accommodate him.  (Defs.' SUDF 20-21, Martinez Decl., McLean

27  Decl., Miner Decl., Williams Decl., Smith Decl.)

28  /////

On December 11, 2007, plaintiff submitted Appeal Log No. MCSP-08-000225, requesting to see a physical therapist and a rheumatologist right away.  Defendant Miner denied that inmate appeal at the informal level of review.  Defendant Miner was employed as an Office Technician and does not have any specialized training in the evaluation or treatment of medical conditions. Defendant Miner is not licensed to practice medicine of any kind and was not responsible for the delivery of medical care services to inmates.  Defendant Miner did not schedule inmates for appointments with outside providers.  Defendant Miner reviewed the Inmate Scheduling and Tracking System, a database that was used by CDCR to track the status of requests for services submitted by health care providers asking that an inmate receive medical evaluation and/or services from a provider outside of the prison, along with plaintiff's medical record, to determine whether plaintiff had been scheduled for an appointment to see a Rheumatologist.  Defendant Miner determined that a request for services to have plaintiff seen by a Rheumatologist had already been submitted and approved and that plaintiff's appointment was pending based on the availability of the outside provider.  Because an appointment was forthcoming, defendant Miner responded to plaintiff's inmate appeal in writing on January 7, 2008, and informed him that his appointment to see a Rheumatologist was pending and that it would be scheduled based on the availability of the specialist.  At no time did defendant Miner disregard either plaintiff's inmate appeal or his request to see a Rheumatologist.  Defendant Miner did not purposefully attempt to delay plaintiff's receipt of any medical treatment.  Defendant Miner never provided medical care to plaintiff.  (Defs.' SUDF 22-28, Martinez Decl., Boyd Decl. Ex. A, McLean Decl., Miner Decl.)

On January 31, 2008, plaintiff sought review of his inmate appeal at the first level of review.  Defendant Martinez was assigned to review plaintiff's inmate appeal on February 5, 2008.  She reviewed the appeal and conducted an investigation regarding his claims and the remedy he sought.  Using Med SATS, a database she used to track the scheduling of medical appointments with outside providers, plaintiff's medical record, and her recollection of the efforts she made to schedule an appointment for plaintiff, defendant Martinez confirmed that she had attempted to secure plaintiff an appointment with a Rheumatologist at both UCD and UCSF, but those requests had been declined.  She also confirmed that she had attempted to secure plaintiff an

1  appointment with a Rheumatologist at SJGH, that plaintiff had been placed on a waiting list for

2  an appointment there, and that he would be scheduled for an appointment as soon as one became

3  available at SJGH.  On February 13, 2007, defendant Martinez responded to plaintiff's inmate

4  appeal in writing, and informed him that UCD and UCSF had declined to schedule him for an

5  appointment and that he had been placed on a waiting list for an appointment with SJGH.

6  Defendant Martinez also informed plaintiff that it could take six months before he saw a

7  Rheumatologist.  (Defs.' SUDF 29-31, Martinez Decl., Boyd Decl. Ex. A, McLean Decl.)

8        Plaintiff sought review of his inmate appeal at the second level of review on March 10,

9  2008.  Defendant McLean, the Health Care Appeals Coordinator at MCSP, conducted an

10  investigation into plaintiff's inmate appeal at the second level of review.  Defendant McLean

11  determined that a routine, non-urgent request for services to have plaintiff seen by a

12  Rheumatologist was made on August 30, 2007.  By the time plaintiff submitted his inmate appeal

13  on December 11, 2007, significant efforts had already been made to schedule him for an outside

14  appointment.  Defendant McLean confirmed that defendant Martinez sent requests for

15  appointments to UCD and UCSF but that those requests were denied by the providers.  Defendant

16  McLean also confirmed that plaintiff had been placed on a waiting list to see a Rheumatologist at

17  SJGH and that he had an appointment scheduled at SJGH in mid-July 2008.  Plaintiff would be

18  referred to a physical therapist, if warranted, after he saw the Rheumatologist.  By the time

19  defendant McLean reviewed plaintiff's inmate appeal at the second level of review, plaintiff had

20  already received the remedy he sought – namely, he be scheduled for an appointment with a

21  Rheumatologist.  Defendant McLean did not deliberately delay or fail to schedule plaintiff's

22  appointment with a Rheumatologist.  Defendant McLean drafted a written response to plaintiff's

23  inmate appeal at the second level of review.  Defendant McLean's second level response was

24  reviewed, approved, and signed by defendant Dr. Williams, the Health Care Manager at MCSP.

25  (Defs.' SUDF 32-38, Martinez Decl., Boyd Decl. Ex. A, McLean Decl., Williams Decl.)

26        By the time defendant Williams had reviewed the second level inmate appeal response,

27  plaintiff had already been provided the remedy he sought – namely, he be scheduled to see a

28  Rheumatologist.  Defendant Williams did not provide plaintiff any treatment for RA.  Defendant

10

1   Williams did not deliberately fail to schedule or otherwise delay plaintiff's appointment with a

2   Rheumatologist.  By the time defendant Williams learned that plaintiff was requesting an

3   appointment through the inmate appeals process, an appointment for plaintiff to see a

4   Rheumatologist had already been scheduled.  Plaintiff was provided a copy of the second level

5   response letter, dated April 21, 2008.  (Defs.' SUDF 39-41, Williams Decl.)

6        There were only a limited number of Rheumatologists with whom CDCR had contracts to

7   provide medical services to inmates housed at MCSP.  Effective June of 2006, all contracts with

8   medical providers were negotiated and entered into by the Receiver's Office.  (Defs.' SUDF 42,

9   Martinez Decl., Smith Decl.)

10       Plaintiff was scheduled for, and attended, an appointment with a Rheumatologist at SJGH

11  on July 9, 2008.  The Rheumatologist noted that plaintiff had RA since 2005 and had been treated

12  with Ibuprofen, Naprosyn, Tylenol, topical salicylate, and glucosamine.  The Rheumatologist

13  assessed plaintiff with possible RA and suggested that plaintiff also be prescribed methotrexate.

14  However, before plaintiff could be prescribed methotrexate, his Hepatitis C status had to be

15  verified.  Over the next six months, medical staff at MCSP saw plaintiff eight times to address the

16  symptoms associated with RA.  In addition to the treatment and medication he had previously

17  been prescribed, plaintiff was also prescribed prednisone.  Once his Hepatitis C blood tests were

18  confirmed, plaintiff was also prescribed methotrexate three months after he saw the

19  Rheumatologist at SJGH.  (Defs.' SUDF 43-45, Boyd Decl. Ex. B, Smith Decl.)

20       Dr. Smith, the Chief Physician and Surgeon at MCSP, has determined that while the

21  approximate ten-month delay between the time plaintiff's request for services to be seen by a

22  Rheumatologist outside of CDCR was approved and when plaintiff was actually seen by a

23  Rheumatologist was regrettable, it did not cause him to suffer a progression in the severity of his

24  RA or cause him to suffer a marked increase in the pain he experienced as a result of his

25  condition.  Based upon review of the medical records documenting plaintiff's encounters with

26  health care providers between 2005 and January 2009, along with his professional training and

27  experience, Dr. Smith's medical opinion is that plaintiff received proper, continual medical care

28  for his RA that complied with the standard of care and skill ordinarily exercised by reputable

1   members of the medical profession and that the delay in receiving a consultation with a

2   Rheumatologist did not cause a progression in plaintiff's RA disease.  Dr. Smith found no

3   evidence in plaintiff's medical record indicating that the delay in being evaluated by a

4   Rheumatologist caused plaintiff to suffer any increased pain or adverse consequences.  While

5   waiting for an appointment with a Rheumatologist to become available, plaintiff's health care

6   providers continued to treat him for RA in an appropriate manner by performing x-rays of his

7   hands and wrists, ordering periodic lab work, and prescribing medications that were indicated for

8   the treatment of RA – namely, Naproxyn, non-steroridal anti-inflammatory medications, Tylenol,

9   Ibuprofen, physical exercises, glucosamine, Motrin, and fish oil.  (Defs.' SUDF 46-48, Boyd

10   Decl. Ex. B, Smith Decl.)

11       When the Rheumatologist at SJGH evaluated plaintiff on July 9, 2008, he did not

12   recommend any change in the medications or care being provided to plaintiff up to that time.  The

13   Rheumatologist indicated that methotrexate should be prescribed, if plaintiff's blood test results

14   permitted, and plaintiff was immediately prescribed the methotrexate once his blood test results

15   were confirmed.  Even after plaintiff was evaluated by the Rheumatologist, it took several

16   additional months for MCSP doctors to identify the most appropriate treatment/medication

17   regimen to provide plaintiff the best possible relief from his symptoms associated with RA.

18   (Defs.' SUDF 49, Smith Decl.)

19                        **ANALYSIS**

20       Based on the evidence submitted in connection with the pending motion, the undersigned

21   finds that the defendants are entitled to summary judgment in their favor on the merits of

22   plaintiff's Eighth Amendment deliberate indifference claim.  As an initial matter, the undersigned

23   finds that based on the evidence submitted on summary judgment and described above, the

24   defendants have borne their initial burden of demonstrating that there is no genuine issue of

25   material fact with respect to the adequacy of the medical care they provided to plaintiff in

26   connection with the treatment of his rheumatoid arthritis.

27       Thus, given the evidence submitted by the defendants in support of the pending motion for

28   summary judgment, the burden shifts to plaintiff to establish the existence of a genuine issue of

material fact with respect to his inadequate medical care claim.  The court has reviewed plaintiff's verified complaint and his opposition to defendants' pending motion.  Drawing all reasonable inferences from the evidence submitted in plaintiff's favor, the court concludes that plaintiff has not submitted sufficient evidence at the summary judgment stage to create a genuine issue of material fact with respect to his claim that the defendants violated his rights under the Eighth Amendment.

Specifically, the evidence presented by plaintiff fails to show that defendants responded to his serious medical needs[1] with deliberate indifference.  See Farmer, 511 U.S. at 834; Estelle, 429 U.S. at 106.  For example, plaintiff contends that the nearly one-year delay he experienced in seeing a Rheumatologist constituted deliberate indifference on the part of the defendants.  However, he has not presented any evidence to show that the defendants were responsible for that delay.  Where, as here, defendants' evidence establishes that they did not have control over outside medical appointments and/or outside resources, they cannot be held responsible for delays experienced in scheduling such an appointment.  See, e.g., Gresham v. Williams, No. 2:08-cv-00190 JMS BMK, 2010 WL 1644793 at *6 (E.D. Cal. Apr. 21, 2010), adopted by Dkt. No. 73 in No. 2:08-cv-00190 JMS BMK (May 18, 2010).

In Gresham, a state prisoner injured his right knee while working in the prison's kitchen.  2010 WL 1644793 at *1.  A physician's assistant examined the prisoner-plaintiff's knee and diagnosed him as suffering with a torn meniscus.  Id.  She referred him to an outside orthopedic

---

[1]  The parties do not dispute, and undersigned finds, that based upon the evidence presented by the parties on summary judgment, a reasonable juror could conclude that plaintiff's rheumatoid arthritis constitutes an objective, serious medical need.  See McGuckin, 974 F.2d at 1059-60 ("The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment."); see also Canell v. Bradshaw, 840 F. Supp. 1382, 1393 (D. Or. 1993) (the Eighth Amendment duty to provide medical care applies "to medical conditions that may result in pain and suffering which serve no legitimate penological purpose.").  Plaintiff's largely undisputed medical record, as well as the observations and treatment recommendations by plaintiff's treating physicians and outside rheumatologist, compel the conclusion that plaintiff's medical condition, if left untreated, could result in "further significant injury" and the "unnecessary and wanton infliction of pain."  McGuckin, 974 F.2d at 1059.

13

1    specialist for an appointment.  Id.  Two months later, the prisoner-plaintiff submitted an inmate

2    request for interview because he still had not seen a specialist.  Id.  Prison officials responded that

3    the scheduling nurse, defendant Martinez (the same defendant as in this instant case), was having

4    trouble scheduling an appointment due to a new contract with a different outside hospital.  Id.

5    Prison officials also responded to the prisoner-plaintiff's administrative appeal by explaining that

6    they had no control over the outside hospital's scheduling of appointments.  Id. at *2.  Nearly a

7    year passed before the prisoner-plaintiff finally saw an outside orthopedic specialist.  Id.  Shortly

8    thereafter, the plaintiff underwent elective reconstructive surgery.  Id.

9          The prisoner-plaintiff in Gresham sued defendant Martinez as well as various medical

10   personnel and a prison official who had reviewed his administrative appeal, claiming that the

11   defendants violated his rights under the Eighth Amendment.  Id.  This court granted summary

12   judgment in favor of defendant Martinez because "while there was delay in scheduling plaintiff's

13   appointment with an outside orthopedic specialist there was no evidence that the delay was within

14   defendant Martinez's control."  Id. at *6.  This court also granted summary judgment in favor of

15   the prison official who reviewed the prisoner-plaintiff's inmate appeal in that case because, again,

16   there was no evidence that any delay experienced by plaintiff in seeing the outside specialist was

17   within the prison official's control.  Id. at *7; see also, e.g., Tyler v. Smith, No. 1:04-cv-006638

18   LJO BAM, 2013 WL 3991989 at *5 (E.D. Cal. Aug. 2, 2013) (although there was no dispute that

19   plaintiff experienced pain due to delays in orthopedic treatment, plaintiff had not presented any

20   evidence to show that defendant had any control over how long it would take for plaintiff to

21   receive an orthopedic consult appointment or surgery); Fraher v. Suryadevara, No. 1:06-cv-1120

22   AWI MJS, 2011 WL 831429 at *10 (E.D. Cal. Mar. 3, 2011) (plaintiff failed to establish

23   existence of disputed fact because he produced no evidence showing that the  defendant doctor

24   was responsible for scheduling appointments or that defendant doctor had any control over

25   whether the appointments took place in a timely manner); Davis v. Calvo, No. C03-4412 JSW

26   (PR), 2006 WL 571357 (N.D. Cal. Mar. 3, 2006) (plaintiff presented no evidence to refute

27   scheduling clerk's evidence that repeated re-scheduling of outside neurosurgical consultation was

28   outside of clerk's control and that appointments were cancelled by outside doctor's office).

Just as in <u>Gresham</u>, in this case, defendants' unrefuted evidence establishes that defendant Martinez (and the other named defendants) had no control over the delay in scheduling plaintiff's appointment with an outside Rheumatologist.  Once defendant Martinez received plaintiff's approved request for services, she immediately set about to schedule him for an appointment with a Rheumatologist at UCD.  UCD had received so many requests for services in the specialty of rheumatology that UCD could not schedule appointments for routine services to occur sooner than six to nine months after they received the request.  UCD declined to schedule plaintiff for an appointment based on the delays they were experiencing in that regard.  Defendant Martinez then requested that plaintiff be scheduled for an appointment to see a Rheumatologist at UCSF.  Like UCD, UCSF was experiencing significant delays in scheduling appointments within the specialty of rheumatology, and UCSF also declined to schedule an appointment for plaintiff.  Defendant Martinez next requested that plaintiff be scheduled for appointment to see a Rheumatologist at SJGH.  SJGH placed plaintiff on a long waiting list, which defendant Martinez tracked in an attempt to ensure that he was not overlooked.  SJGH subsequently scheduled plaintiff for an appointment with a Rheumatologist on July 9, 2008.  (Martinez Decl., McLean Decl., Miner Decl., Williams Decl., Smith Decl.)

Here, defendants' unrefuted evidence establishes the following.  There were often delays in scheduling inmates for appointments with outside Rheumatologists, who had the discretion to select and prioritize the patients they evaluated and treated.  Rheumatology is a discrete medical specialty for which there are a relatively small number of specialists.  There was an even smaller number of Rheumatologists willing to accept prisoners as patients.  It was not unusual for the few Rheumatologists to have substantial backlogs and thus not be available for many months to provide routine or non-emergency care when called by prisons for appointments.  Outside providers, not CDCR, determine and arrange the appointment dates.  CDCR staff does not have any control over when an outside medical care provider is available for an appointment with a prisoner patient.  Defendant Martinez used her best efforts to schedule plaintiff for an appointment with a Rheumatologist as soon as possible, and she did not deliberately fail to schedule or delay his appointment.  Despite her best efforts, there was a long waiting list to see a

1    Rheumatologist through all of the providers she contacted, and plaintiff was scheduled for the

2    first appointment that SJGH had to accommodate him.  (Martinez Decl., McLean Decl., Miner

3    Decl., Williams Decl., Smith Decl.)

4         The court observes that the Ninth Circuit recently held that the constraints under which an

5    individual defendant operated may be considered in determining whether the defendant is liable

6    for money damages because he or she was deliberately indifferent to a prisoner plaintiff's serious

7    medical needs.  See Peralta v. Dillard, 744 F.3d 1076, 1083-84 (9th Cir. 2014) (en banc); see also

8    Walker v. Benjamin, 293 F.3d 1030, 1038 (7th Cir. 2002) (defendant doctor entitled to summary

9    judgment where the plaintiff presented no evidence that delays in his visit with a specialist were

10   within the doctor's control).  In Peralta, a state prisoner brought a § 1983 action against the

11   prison's chief dental officer and chief medical officer as well as the staff dentist alleging that they

12   were deliberately indifferent to his serious medical needs when he experienced a several-month

13   delay in having his teeth cleaned and receiving treatment for associated pain.  See id.  The Ninth

14   Circuit considered whether prison officials, being sued for damages, could assert a lack of

15   available resources as a defense.  The plaintiff had challenged a jury instruction that stated

16   "[w]hether a dentist or doctor met his duties to Plaintiff Peralta under the Eighth Amendment

17   must be considered in the context of the personnel, financial, and other resources available to him

18   or her or which he or she could reasonably obtain."  Id. at 1082.  The Ninth Circuit held that "[a]

19   prison medical official who fails to provide needed treatment because he lacks the necessary

20   resources can hardly be said to have intended to punish the inmate" for purposes of the Eighth

21   Amendment's cruel and unusual punishment clause.  The Ninth Circuit, reviewing Supreme

22   Court precedent, explained:

23            [T]he Court has told us that prison officials aren't deliberately
            indifferent to a prisoner's medical needs unless they act wantonly,
24            and whether an official's conduct "can be characterized as 'wanton'
            depends upon the constraints facing [him]."  The Court has told us
25            that, even if an official knows of a substantial risk, he's not liable
            "if [he] responded reasonably."  (internal citations omitted)
26

27   Id. at 1082.  The Ninth Circuit concluded that what resources were available to defendants is

28   "highly relevant because they define the spectrum of choices that officials had at their disposal."

1   Id. at 1083.

2          Moreover, in this case, plaintiff has not come forward with any evidence to show that the

3   delay he experienced in seeing an outside Rheumatologist resulted in serious harm.  See Wood,

4   900 F.2d 1335 (delay of more than one month in referring a prisoner to an orthopedic specialist

5   for a free-floating pin in his shoulder during which time the prisoner complained of pain was not

6   actionable because no substantial harm resulted); Coyle v. Cambra, No. C 02-1810 SBA (PR),

7   2005, WL 2397517 at *11 (N.D. Cal. Sept. 27, 2005) (delay of more than six months before a

8   prisoner received an orthopedic consultation did not constitute deliberate indifference because the

9   plaintiff presented no evidence that his complaints of knee pain during the delay necessitated any

10  further treatment than what he received).  In contrast, defendants have submitted unrefuted expert

11  testimony from Dr. Smith that the delay plaintiff experienced in receiving a consultation with a

12  Rheumatologist did not cause a progression in his RA disease.  (Smith Decl.)  Dr. Smith found no

13  evidence in the medical record indicating that the delay in plaintiff being evaluated by a

14  Rheumatologist caused him to suffer any increased pain or adverse consequences.  (Id.)  In fact,

15  while waiting for an appointment with a Rheumatologist to become available, plaintiff's health

16  care providers continued to treat him for RA in an appropriate manner.  (Id.)  Plaintiff's medical

17  records demonstrate that from 2005 through July 9, 2008, when plaintiff finally saw a

18  Rheumatologist, medical personnel at MCSP regularly reviewed his case and monitored his

19  complaints of pain and provided him appropriate medical care.  (Id. & Boyd Decl. Ex. B.)  For

20  example, plaintiff's providers scheduled him for appointments every thirty to sixty days, ordered

21  x-rays of his hands and wrists, and prescribed him medication to manage symptoms associated

22  with RA, including Naprosyn, Ibuprofen, exercises, Motrin, and glucosamine.  (Id.)  In this

23  regard, the evidence before the court on summary judgment establishes that prison medical

24  personnel were aware of plaintiff's condition and complaints and sought to appropriately address

25  them.  The unrefuted evidence does not reflect deliberate indifference on the part of defendants.

26         Insofar as plaintiff takes issue with the medical care he received and blames defendants

27  for not providing or obtaining different or additional medical care for him, plaintiff's contentions

28  are without merit.  As an initial matter, none of the named defendants in this action were

1  plaintiff's direct medical providers; rather, they were in charge of scheduling his outside medical
2  appointments and/or reviewing his administrative appeals.  Moreover, plaintiff has come forward
3  with no evidence showing that the defendants, in scheduling his appointment with the
4  Rheumatologist and/or responding to his administrative inmate appeals, intentionally failed to act
5  in response to his serious medical needs resulting in his suffering and harm.  See Jett, 439 F.3d at
6  1096.

7       At most, plaintiff has asserted a claim for negligence and/or a mere difference of opinion
8  as to the appropriate course of medical treatment for his condition.  It is well established,
9  however, that mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this
10  cause of action."  Broughton, 622 F.2d at 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06).
11  See also Wood, 900 F.2d at 1334 ("In determining deliberate indifference, we scrutinize the
12  particular facts and look for substantial indifference in the individual case, indicating more than
13  mere negligence or isolated occurrences of neglect.").  It is also well established that a mere
14  difference of opinion between a prisoner and prison medical personnel as to the proper course of
15  medical care does not give rise to a cognizable § 1983 claim.  See Snow, 681 F.3d at 988;
16  Jackson, 90 F.3d at 332; Sanchez, 891 F.2d at 242; Franklin, 662 F.2d at 1344; see also Fleming
17  v. Lefevere, 423 F. Supp. 2d 1064, 1070 (C.D. Cal. 2006) ("Plaintiff's own opinion as to the
18  appropriate course of care does not create a triable issue of fact because he has not shown that he
19  has any medical training or expertise upon which to base such an opinion.").  Rather, to establish
20  that a difference of medical opinion as to the appropriate course of treatment amounted to
21  deliberate indifference, plaintiff must "show that the course of treatment the doctors chose was
22  medically unacceptable under the circumstances" and that "they chose this course in conscious
23  disregard of an excessive risk to [the prisoner's] health."  Jackson, 90 F.3d at 332.  See also
24  Toguchi, 391 F.3d at 1058.

25       In this case, plaintiff has not come forward with any evidence demonstrating that the
26  course of treatment provided by his care providers and tacitly approved the defendants who
27  reviewed his inmate appeals was medically unacceptable under the circumstances.  Although the
28  outside Rheumatologist plaintiff eventually saw prescribed him an additional medication in the

1    form of methotrexate, plaintiff has presented no evidence to indicate that the course of treatment

2    he had been given by prison doctors up to that point was not medically acceptable.  Nor has

3    plaintiff submitted any evidence to cast doubt on defendants' unrefuted expert testimony from Dr.

4    Smith which establishes that the medical care plaintiff received was medically appropriate under

5    the circumstances and within the standard of care and skill ordinarily exercised by reputable

6    /////

7    members of the medical profession at that time.  Plaintiff has failed to raise a triable issue of fact

8    that his complaints necessitated any further action on the part of the defendants.

9         Plaintiff also has not come forward with any competent evidence demonstrating that

10   defendants "chose" plaintiff's course of treatment in conscious disregard of an excessive risk to

11   his health.  By merely expressing his vague and speculative opinion in this regard, plaintiff fails

12   to create a genuine issue of material fact.  See, e.g., Hansen v. United States, 7 F.3d 137, 138 (9th

13   Cir.1993) ("When the non-moving party relies on its own affidavits to oppose summary

14   judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue

15   of material fact."); Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose

16   a motion must be made on personal knowledge, set out facts that would be admissible in

17   evidence, and show that the affiant or declarant is competent to testify on the matters stated.").

18        In sum, there being no genuine dispute of material fact as to whether the defendants acted

19   with deliberate indifference to plaintiff's serious medical needs, the undersigned will recommend

20   that defendants' motion for summary judgment be granted.[2]

21                          **OTHER MATTERS**

22        Plaintiff also asserts a state law claim for negligence in his amended complaint.  A district

23   court may decline to exercise supplemental jurisdiction over state law claims if the district court

24   has dismissed all claims over which it has original jurisdiction.  28 U.S.C. § 1367(c)(3).  The

25   court's discretion to decline jurisdiction over state law claims is informed by the values of judicial

26

27   _____
     [2] In light of the recommendation set forth in these findings and recommendations, the
     undersigned declines to address defendants' alternative argument that they are entitled to
28   summary judgment in their favor based on the affirmative defense of qualified immunity.

1  economy, fairness, convenience, and comity.  Acri v. Varian Associates, 114 F.3d 999, 1001 (9th

2  Cir. 1997) (en banc).  In addition, "[t]he Supreme Court has stated, and [the Ninth Circuit] ha[s]

3  often repeated, that 'in the usual case in which all federal law claims are eliminated before trial,

4  the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining

5  state law claims.'"  Id.  (quoting Carnegie–Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)).

6  /////

7       Of course, "primary responsibility for developing and applying state law rests with the

8  state courts."  Curiel v. Barclays Capital Real Estate, Civ. No. S–09–3074 FCD KJM, 2010 WL

9  729499 at *1 (E.D. Cal. Mar. 2, 2010).  Here, consideration of judicial economy, fairness,

10  convenience, and comity all point toward declining to exercise supplemental jurisdiction.

11  Therefore, the undersigned will recommend declining to exercise supplemental jurisdiction over

12  plaintiff's state law claims.

**CONCLUSION**

13

14       IT IS HEREBY RECOMMENDED that:

15       1.  Defendants' motion for summary judgment (Doc. No. 61) be granted;

16       2.  The court decline to exercise supplemental jurisdiction over any state law claims and

17  dismiss any state law claims without prejudice to plaintiff re-filing them in state court; and

18       3.  This action be closed.

19       These findings and recommendations are submitted to the United States District Judge

20  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

21  after being served with these findings and recommendations, any party may file written

22  objections with the court and serve a copy on all parties.  Such a document should be captioned

23  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

24  objections shall be filed and served within seven days after service of the objections.  The parties

25  are advised that failure to file objections within the specified time may waive the right to appeal

26  the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

27  Dated:  April 17, 2015

28

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

1

2

DAD:9
long2548.57
3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28